# KASOWITZ LLP

1633 BROADWAY
NEW YORK, NEW YORK 10019
(212) 506-1700
FAX: (212) 506-1800

STEPHEN W. TOUNTAS
DIRECT DIAL: (212) 506-1739
DIRECT FAX: (212) 500-3550
STOUNTAS@KASOWITZ.COM

ATLANTA
BOULDER
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
WASHINGTON DC


October 9, 2026

**VIA ECF**

Hon. Jesse M. Furman
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *Gaucher et al. v. Digital Brands Grp.*, No. 1:26-cv-06889-JMF
Response to Plaintiffs' Letter Motion (Dkt. 57)

Dear Judge Furman:

We write for Defendant Digital Brands Group Inc. ("DBGI") in accordance with the Court's Order dated October 7, 2026 (Dkt. 58) to address the supplemental exhibits filed by Plaintiffs (Dkt. 57).[1] The supplemental exhibits consist of representations by interested parties and outdated evidence of a resolved dispute. None justify the preliminary injunction sought.

**1) The Dispute with Shawake Capital Was Resolved**

Plaintiffs assert that there is an imminent risk of insolvency from a possible lawsuit based on a dispute with Dmitriy Shapiro and Shawake Capital. Plaintiffs omit key details. As the exhibit reflects, that dispute was already largely resolved when Plaintiffs filed. *See* Dkt. 57-4 at 7 ("Once you respond to this e-mail with those authorizations and confirmation, please consider Shawake's default notice rescinded"), 12 ("Hil, we agreed to pretty much everything over last night."). The only remaining dispute related to authorizing a third-party to provide information and whether DBGI could provide the authorization requested. *Id.* at 12.

Since then, the remaining issues have been resolved. On October 9, 2026 Davis and Shapiro reached an agreement, with Shapiro notifying Davis the notice of default had been rescinded. *See* Ex. 1, ¶ 9.

**2) The Dispute with Shawake Capital Does Not Evidence Financial Distress**

Plaintiffs also ask the Court to read this dispute as evidence of inability to pay. But inability to pay was not the reason for withholding payment. As the e-mails demonstrate, Davis's primary concern related to collusion among certain shareholders. *See* Dkt. 57-4 at 1-3. The parties also disagreed on the applicable pool of funds from which DBGI was legally required to draw, *not* whether DBGI had the means to satisfy the payment. *See id.* At no point during this lengthy—and heated—exchange does Shapiro express concern that DBGI lacked the means to make the

---

[1] Due to the length of the exhibits, DBGI addresses the portions Plaintiffs highlighted as relevant to their motion for a preliminary injunction in their letter (Dkt. 57). DBGI does not thereby waive or concede the remaining factual contentions in these documents.

requested payments. Plaintiffs provide no support for their contention that the reason for non-payment was tied to financial difficulties.

Plaintiffs also inflate the significance of Davis's allusion to the possibility of bankruptcy proceedings if the dispute escalated. In context, the statement was a negotiation tactic. Shapiro's response reflects that he understood it as such. *See* Dkt. 57-4 at 16 ("It is hard for me to see how a bankruptcy is in the best interests of shareholders... especially with a buyout offer at $77 per share… and $100mm+ contracts that you have been announcing.").

**3) <u>The Bartch Declaration Does Not Establish Risk of Insolvency</u>**

Plaintiffs overstate the probative value of Bartch's declaration in resolving their motion. Bartch is an interested party seeking comparable preliminary injunctive relief in the very action the Court seeks to consolidate because it is closely related to this action. *See* Dkt. 55; *Bartch v. Digital Brands Group, Inc.*, No. 26-CV-8734 (S.D.N.Y) (JMF), Dkts. 5, 6, 7. His assertions regarding his "belie[f]" that DBGI is "spiraling" are self-serving and lack adequate support, which may explain why Plaintiffs do not rely on them in their letter. *See* Dkt. 57-3, ¶ 33.

Instead, Plaintiffs point to Bartch's attestation regarding the market capitalization of DBGI, as evidence of DBGI's purported inability to satisfy a monetary judgment. DBGI's ability to pay is not reflected in its market capitalization alone. *See* Ex. 1, ¶¶ 1-6. For example, DBGI has a $20 million Shelf Registration on file with the SEC from which funds can quickly be drawn. *See* Ex. 1, ¶3. Bartch's narrow and cursory contentions regarding market capitalization fall far short of showing the type of "likely and imminent" risk of insolvency courts in this circuit require to justify a finding of irreparable harm.[2] *See CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 782 (2d Cir. 2010); Dkt. 30 at 22-23. Plaintiffs also overstate the volatility of DBGI's stock price, which has remained stable since the action was filed. *See* Ex. 1, ¶ 2.

**4) <u>Bartch's Assertions on the Buyout of Certain Series D Shares Do Not Move the Needle</u>**

Bartch's denials do not undercut the significance of the e-mails filed by DBGI. These e-mails – seemingly forwarded to Davis by mistake – contradict Plaintiffs' and Bartch's contentions regarding the transactions at issue. On January 26, 2026, Bartch states "***to be clear***, the intention is to ***buy out in full***, Turnpoint, Cobra and Secure Net ***for a total of $2,013,650***." Dkt. 31-14 at 7. That is inconsistent with the representation in the flow of funds memorandum only days later on February 2, 2026, which states this payment amount was merely an "Initial First Tranche Payment." Dkt. 38-19. These private communications cast doubt on the accuracy of the external representations to DBGI in the flow of funds memorandum and other transaction documents. Bartch's denial does not reflect otherwise or explain the inconsistency. Indeed, it is telling that Bartch felt the need to be particularly explicit about his intent to buy out these entities in full for a total price of $2,013,650 in private discourse.

---

[2] Plaintiffs also reference in passing the related lawsuit filed by Bartch as a basis to assert risk of insolvency. That lawsuit does not create "likely and imminent" risk of insolvency either.

Respectfully submitted,

Stephen W. Tountas

cc: All counsel of record (via ECF)