**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PHILIP GAUCHER, JR. AND JOE GIAMICHAEL,<br><br>Plaintiffs,<br><br>v.<br><br>DIGITAL BRANDS GROUP INC.,<br><br>Defendant. | Case No. 26-cv-6889 (JMF) |

**DEFENDANT DIGITAL BRANDS GROUP, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER REQUIRING DEFENDANT TO POST A BOND AS SECURITY FOR COSTS AND ATTORNEYS' FEES PURSUANT TO LOCAL CIVIL RULE 54.2**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 3

I. RULE 54.2 GENERALLY PROVIDES SECURITY FOR "COSTS" AGAINST PLAINTIFFS WHO CHOOSE THE FORUM, NOT A $550,000 FEE BOND AGAINST A DOMESTIC DEFENDANT. ........ 3

II. PLAINTIFFS' FEE ENTITLEMENT IS CONTINGENT AND PREMATURE, AND SECTION 5.9 IS A BACKWARD-LOOKING REIMBURSEMENT PROVISION, NOT A PREPAYMENT DEVICE. ........ 6

III. THE RULE 54.2 FACTORS DO NOT SUPPORT SECURITY WHEN WEIGHED IN THEIR TOTALITY. ........ 7

IV. EVEN IF SOME SECURITY WERE WARRANTED, THE $550,000 AMOUNT IS SPECULATIVE, MISCATEGORIZED, AND WOULD DENY DBGI ITS DAY IN COURT. ........ 10

V. THE DEMAND TO STRIKE DBGI'S ANSWER AND COUNTERCLAIMS IS AN IMPROPER SANCTION, AND PLAINTIFFS' RULE 11, SECTION 1927, AND INHERENT-POWER THEORIES ARE PREMATURE. ........ 12

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Assocs. Against Outlier Fraud v. Huron Consulting Grp., Inc.*,
817 F.3d 433 (2d Cir. 2016) ........................................11

*Atlanta Shipping Corp. v. Chem. Bank*,
818 F.2d 240 (2d Cir. 1987) ........................................10

*Beautiful Jewellers Priv. Ltd. v. Tiffany & Co.*,
No. 06 CIV(KMW) (FM), 2008 WL 28765 ........................................3, 4

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ........................................13

*Enmon v. Prospect Cap. Corp.*,
675 F.3d 138 (2d Cir. 2012) ........................................13

*Hawley v. Mphasis Corp.*,
302 F.R.D. 37 (S.D.N.Y. 2014) ........................................12, 13

*Kanongataa v. Am. Broad. Companies, Inc.*,
No. 16-CV-7382 (LAK), 2017 WL 4776981 (S.D.N.Y. Oct. 4, 2017) ........................................12

*Kensington Int'l Ltd. v. Republic of Congo*,
No. 03 CIV. 4578 (LAP), 2005 WL 646086 (S.D.N.Y. Mar. 21, 2005)........................................4, 7, 11

*Lackey v. Stinnie*,
604 U.S. 192 (2025) ........................................6, 12

*RLS Assocs., LLC v. United Bank of Kuwait PLC*,
464 F. Supp. 2d 206 (S.D.N.Y. 2006)........................................4, 7, 10, 11

*RLS Assocs., LLC v. United Bank of Kuwait PLC*,
No. 01 CIV. 1290 (CSH), 2005 WL 578917 (S.D.N.Y. Mar. 11, 2005)........................................5, 8, 10

*Sea Trade Co. v. FleetBoston Fin. Corp.*,
No. 03 CIV. 10254 (JFK), 2008 WL 161239 (S.D.N.Y. Jan. 15, 2008)........................................4, 5, 6

*Selletti v. Carey*,
173 F.3d 104 (2d Cir. 1999) ........................................1, 7, 11

*Selletti v. Carey*,
173 F.R.D. 96 (S.D.N.Y. 1997) ........................................4, 11

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
490 F.3d 130 (2d Cir. 2007) .......... 13

*Sole v. Wyner*,
551 U.S. 74 (2007) .......... 6

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*,
682 F.3d 170 (2d Cir. 2012) .......... 13

*Taniguchi v. Kan Pac. Saipan, Ltd.*,
566 U.S. 560 (2012) .......... 11

**Statutes**

28 U.S.C. § 1738 .......... 5

28 U.S.C. § 1920 .......... 10

28 U.S.C. § 1927 .......... 13

U.S. Const. art. IV, § 1 .......... 5

**Rules**

N.Y. C.P.L.R. 8501(a) .......... 4

Defendant Digital Brands Group, Inc. ("DBGI"), by and through its counsel, respectfully submits its memorandum of law in opposition to Plaintiffs' motion for costs and attorneys' fees pursuant to Local Civil Rule 54.2 (Dkt. 79). DBGI's opposition is supported by the Declaration of John Hilburn Davis IV ("Davis Decl.") filed contemporaneously herewith.

## PRELIMINARY STATEMENT

Plaintiffs ask this Court to order DBGI to post a $550,000 bond — not for the modest taxable costs that Local Civil Rule 54.2 secures, but for Plaintiffs' own projected attorneys' fees through a trial that may be more than a year away. (Dkt. 79 at 6). The request inverts the Rule in every dimension that matters. Rule 54.2 authorizes security for "costs," and courts in this District impose it overwhelmingly on *plaintiffs* — most often foreign or insolvent plaintiffs who chose this forum and whose claims are of questionable merit. Plaintiffs cite no decision ordering a domestic corporate defendant to post a half-million-dollar bond for the opposing side's anticipated fees, and we are aware of none.

Plaintiffs' theory also defeats itself. They insist DBGI is so financially distressed that it may be unable to satisfy a future judgment, then ask the Court to order a bond that the same company could not post — with the automatic striking of DBGI's Answer and six Counterclaims as the price of nonpayment. (Dkt. 79 at 24). The Second Circuit forbids precisely this maneuver: a security requirement "may not be used as a means to dismiss suits of questionable merit filed by [parties] with few resources," and a party's inability to pay "must weigh heavily" against any such result. *Selletti v. Carey*, 173 F.3d 104, 112 (2d Cir. 1999). A bond calibrated to force a litigant out of court is not security; it is a default judgment by another name.

The motion fails for at least five reasons. First, Rule 54.2 does not reach a domestic defendant the way it reaches a forum-choosing plaintiff. Second, Plaintiffs are not a "prevailing

party" and will not be one unless and until they obtain a final merits judgment; their contractual fee clause is a backward-looking reimbursement provision, not a prepayment device. Third, the Rule's discretionary factors, when reviewed in totality, weigh against security. Fourth, the $550,000 figure is speculative, unsupported by any contemporaneous records, and padded with items that are not recoverable "costs" at all. Fifth, the demand to strike DBGI's pleadings, and the Rule 11 and sanctions theories offered to inflate the bond, are procedurally improper and premature. The motion should be denied.

## BACKGROUND

This action began as a contract dispute over the conversion of Series D preferred shares that Plaintiffs commenced in this District. Its present scope reflects the claims and defenses Plaintiffs' own suit compelled DBGI to raise: DBGI's affirmative defenses and counterclaims arise from the very SPA and conversion transaction Plaintiffs placed in issue and had to be asserted in this action or be forfeited. DBGI remains a defendant haled into a forum it did not initially select.

On October 13, 2026, the Court granted Plaintiffs a preliminary injunction, holding that Section 4.1(e) of the parties' Securities Purchase Agreement ("SPA") "unambiguously prohibits the defendant's admitted refusal to deliver the unlegended shares." (Dkt. 71 ("Tr.") 33:12-15). The Court's merits holding was expressly confined to that condition-precedent provision. It accepted DBGI's factual allegations "as true" for purposes of the motion, without resolving their merits, and held that the prior-breach defense fell within Section 4.1(e). (Tr. 34:7-35:1). It did not adjudicate DBGI's fraud and securities claims, observing only that, on the preliminary-injunction record then before it, DBGI "did not argue in its papers, let alone show, that it was fraudulently induced to enter the contract." (Tr. 35:2-10). The Court's reference to a "risk that DBGI 'will not be able to pay damages at the conclusion of the litigation'" was made in the irreparable-harm

analysis, on the limited preliminary-injunction record, and quoted boilerplate going-concern language that DBGI's counsel explained has appeared in DBGI's filings "pretty much since its inception" and has described "the state of affairs for four years." (Tr. 37:6-20; 25:11-14; *see* Davis Decl. ¶ 7). The Court declined to require any bond of Plaintiffs — in part because DBGI had not responded to the bond issue and thereby "forfeited any objection," and in part because it was "not clear ... what amount of a bond would suffice." (Tr. 39:16-40:15).

On October 8, 2026, DBGI answered and asserted counterclaims. (Dkt. 61). Eleven days later, Plaintiffs filed this motion, seeking a $550,000 bond for their own costs and fees, supported by a six-page attorney declaration projecting the fees Plaintiffs expect to incur through a ten-day trial. (Dkt. 78 ¶ 10).

Fact discovery runs through February 10, 2027 and expert discovery through March 26, 2027 under the operative Civil Case Management Plan and Scheduling Order, and any trial will follow the close of discovery and the resolution of dispositive motions. (Dkt. 66).

## ARGUMENT

### I. RULE 54.2 GENERALLY PROVIDES SECURITY FOR "COSTS" AGAINST PLAINTIFFS WHO CHOOSE THE FORUM, NOT A $550,000 FEE BOND AGAINST A DOMESTIC DEFENDANT.

Local Civil Rule 54.2 permits the Court to "order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate." Local Civ. R. 54.2. Courts weigh six discretionary factors: (1) the party's financial condition and ability to pay, (2) whether it is a non-resident or foreign corporation, (3) the merits of the underlying claims, (4) the extent and scope of discovery, (5) the legal costs expected, and (6) compliance with past orders. *Beautiful Jewellers Priv. Ltd. v. Tiffany & Co.*, No. 06 CIV. 3085 (KMW) (FM), 2008 WL 2876508, at *2 (S.D.N.Y. July 21, 2008). The determination is "an

exercise with equitable as well as legal implications." *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 220 (S.D.N.Y. 2006).

Nearly every decision applying the Rule involves a *plaintiff* who selected the forum. The non-resident/foreign-corporation factor tracks N.Y. C.P.L.R. 8501(a), which lets a *defendant* demand security from a *foreign plaintiff*; the merits factor asks whether the movant faces a plaintiff pressing claims of questionable merit. *Beautiful Jewellers*, 2008 WL 2876508, at *2. That is why the decisions Plaintiffs rely on imposed security on plaintiffs — and, in all but a narrow set of instances, on foreign or insolvent plaintiffs litigating claims of doubtful merit. In *Beautiful Jewellers,* the bonded party was a plaintiff organized under the laws of India with no United States assets; in *Sea Trade Co. v. FleetBoston Fin. Corp.* the bonded parties were Bahamian and Argentine plaintiff-corporations, one in bankruptcy; in *Selletti v. Carey*, it was an individual plaintiff pressing a copyright "strike suit" he litigated in the media. *See* *Beautiful Jewellers*, 2008 WL 2876508, at *1-2; *Sea Trade Co. v. FleetBoston Fin. Corp.*, No. 03 CIV. 10254 (JFK), 2008 WL 161239 at *2 (S.D.N.Y. Jan. 15, 2008); *see generally* *Selletti v. Carey*, 173 F.R.D. 96, 97 (S.D.N.Y. 1997).

The few decisions bonding a *defendant* each involved a *foreign* party. *Kensington Int'l Ltd. v. Republic of Congo* involved a foreign sovereign that had ignored a $56 million judgment and was "endeavoring to make itself judgment-proof." *Kensington Int'l Ltd. v. Republic of Congo*, No. 03 CIV. 4578 (LAP), 2005 WL 646086, at *2 (S.D.N.Y. Mar. 21, 2005). In *RLS Assocs., LLC v. United Bank of Kuwait PLC*, the only other instance, the bonded defendant was a London bank with no apparent United States assets, required to post $75,000 — and then only to match the symmetrical bond imposed on the plaintiff. *RLS Assocs., LLC*, 464 F. Supp. 2d at 225–226. No reported decision has required a *domestic* defendant to secure an opponent's anticipated fees.

DBGI is none of these things. It is a domestic Nevada corporation. (Dkt. 61 ¶¶ 5, 16). When this District confronted a *domestic* party, it held that the fact that "Plaintiff is not a non-resident or foreign corporation," was one of the factors that "militate *against* requiring a bond." *RLS Assocs., LLC v. United Bank of Kuwait PLC*, No. 01 CIV. 1290 (CSH), 2005 WL 578917, at *1 (S.D.N.Y. Mar. 11, 2005). Domestic status weighs against security, not for it.

Plaintiffs' "no known assets in New York" refrain confuses the inquiry. (Dkt. 79 at 17). The foreign-corporation factor exists because a judgment against an offshore entity may be unenforceable abroad. A judgment against a domestic corporation is enforceable in any State through full faith and credit, whether or not DBGI keeps assets in this District. *See* U.S. CONST. ART. IV, § 1; 28 U.S.C. § 1738.

Moreover, DBGI's assertion of counterclaims does not transform it into the kind of plaintiff Rule 54.2 bonds. Plaintiffs assert that because DBGI is "now a counterclaim-plaintiff," it "stands precisely where Rule 54.2 bonds are most often imposed." (Dkt. 79 at 15). That is wrong for three reasons. First, DBGI did not choose this forum; Plaintiffs sued here, and DBGI's counterclaims arise from the very same SPA and conversion transaction at the heart of Plaintiffs' complaint. A defendant asserting transactionally related counterclaims remains, in substance, a defendant haled into a forum it did not select — not the forum-shopping, judgment-proof, or strike-suit plaintiff at which the Rule is typically aimed. Second, even where a party wears both hats, counterclaim status at most bears on costs attributable to the counterclaims; it cannot justify securing Plaintiffs' *entire* projected cost of defending their own affirmative case and prosecuting it to trial. Third, the counterclaim label does not unlock broad security as a matter of course: in *Sea Trade Co. v. FleetBoston Fin. Corp.*, the court granted a costs bond against the foreign plaintiffs but *denied* the defendant-counterclaimant's separate request to secure its expected recovery on its counterclaim.

*Sea Trade Co.*, 2008 WL 161239, at *4. The point is narrow but telling: counterclaim status did not entitle that movant to security beyond the Rule's limits, and DBGI's counterclaim status likewise does not convert it into the forum-choosing plaintiff against whom a Rule 54.2 fee bond typically runs.

## II. PLAINTIFFS' FEE ENTITLEMENT IS CONTINGENT AND PREMATURE, AND SECTION 5.9 IS A BACKWARD-LOOKING REIMBURSEMENT PROVISION, NOT A PREPAYMENT DEVICE.

Plaintiffs' bond rests almost entirely on fees they hope to recover as the eventual "prevailing party" under SPA Section 5.9. (Dkt. 79 at 20). But Plaintiffs are not a prevailing party, and a preliminary injunction does not make them one. The Supreme Court held that "[b]ecause preliminary injunctions do not conclusively resolve the rights of parties on the merits, they do not confer prevailing party status." *Lackey v. Stinnie*, 604 U.S. 192, 201 (2025). A party "prevails" only when a court grants "enduring relief on the merits that alters the legal relationship between the parties." *Lackey*, 604 U.S. at 207. Interim relief is a "transient victory at the threshold of an action" that supports no fee award if the litigation's final judgment undoes it, and a fee request "at the initial stage" is "premature." *Sole v. Wyner*, 551 U.S. 74, 78, 84 (2007). Although those decisions construe fee-shifting statutes, they define the settled meaning of "prevailing party" and the finality principle that governs the identical term in Section 5.9.

Plaintiffs' assertion that they "are likely to be the prevailing party" is not a present entitlement; it is a prediction about a judgment that does not yet exist. (Dkt. 79 at 20). The clause is also reciprocal — DBGI seeks its own fees under the same provision — so there is no basis to assume, before trial, that Plaintiffs rather than DBGI will be the party owed anything. (Dkt. 61 at 22, 38).

Section 5.9's own text confirms the point. It provides that "the prevailing party in such Action shall be **reimbursed** by the non-prevailing party for its reasonable attorneys' fees and other costs and expenses **incurred** with the investigation, preparation and prosecution of such Action." (SPA § 5.9 (emphasis added) (Dkt. 14-1)). "Reimbursed" and "incurred" are backward-looking: the clause compensates a prevailing party, at the end of the case, for fees it has already spent. It is not a security or prepayment mechanism, and it says nothing about requiring an adversary to fund the other side's litigation in advance. Plaintiffs ask the Court to rewrite a reimbursement promise into a bond obligation the parties never agreed to.

This is not to say attorneys' fees can never be included in Rule 54.2 security; where a party has contractually agreed to pay fees, they may be. *Kensington*, 2005 WL 646086, at *1. But that principle goes to what a bond *may* secure in an appropriate case, not to whether these Plaintiffs have shown a present, non-contingent entitlement sufficient to justify a $550,000 bond now. They have not.

## III. THE RULE 54.2 FACTORS DO NOT SUPPORT SECURITY WHEN WEIGHED IN THEIR TOTALITY.

*Financial condition.* Plaintiffs call this the "weightiest factor" and invoke the going-concern language in DBGI's SEC filings. (Dkt. 79 at 15). But the authority that a party's lack of assets can support a bond is double-edged: the same cases cap the amount and forbid using a party's inability to pay to end the case. *Selletti*, 173 F.3d at 112; *RLS*, 464 F. Supp. 2d at 224–25. The going-concern disclosure is longstanding boilerplate that, as DBGI's counsel explained without contradiction at the preliminary-injunction hearing, has appeared in DBGI's filings "pretty much since its inception" and has described "the state of affairs for four years." (Tr. 25:11-14; *see* Davis Decl. ¶ 7).

A going-concern qualification is a forward-looking disclosure about uncertainty required by accounting standards; it is not a present finding of insolvency or an admission that a company cannot pay its debts. DBGI's own conduct over that same multi-year period proves the point: it has continued to operate its business and to raise capital. (Davis Decl. ¶¶ 3-7). As set out in the accompanying Declaration of John Hilburn Davis, IV, DBGI maintains an active at-the-market equity program and a $20 million shelf registration from which it raises capital on a recurring basis, anticipates a multi-million-dollar payment under a previously disclosed government contract, and continues to generate revenue through its operating brands and a licensing program spanning twenty-six universities. (Davis Decl. ¶¶ 3-7). A company that raises capital and services its obligations is not one that cannot satisfy a modest costs award.

The Court's observation about a "risk" of nonpayment was a preliminary irreparable-harm assessment on the limited preliminary-injunction record, not an insolvency finding; it does not establish that DBGI cannot satisfy a modest *costs* award. (Tr. 37:6-20). Should the Court reach the amount of any security, DBGI will make a further showing of its ability to pay. (Davis Decl. ¶ 8).

*Non-resident or foreign corporation.* As set forth above, DBGI is a domestic Nevada corporation. This factor weighs against a bond. *RLS Assocs., LLC*, 2005 WL 578917, at *1.

*Merits.* Plaintiffs ask the Court to treat the preliminary injunction as having resolved the whole case and to declare the counterclaims of "no legal viability." (Dkt. 79 at 21). The Court held no such thing. Its merits ruling was limited to Section 4.1(e), the condition-precedent provision, and it expressly accepted DBGI's allegations "as true" without adjudicating DBGI's fraud and securities claims. (Tr. 34:7-35:1; 35:2-10). The Court's only observation on the securities theory was that DBGI "did not argue in its papers, let alone show," fraudulent inducement in the preliminary-injunction briefing — an observation about the limited record then before the Court,

not a ruling that the counterclaims fail as a matter of law. DBGI's six counterclaims and its affirmative defenses remain to be tested on a full factual record; whether they succeed turns on disputed questions of knowledge, reliance, and market impact that discovery has not yet reached. Point III of Plaintiffs' brief is argument, not an adjudication, and effectively asks the Court to grant, through a bond motion, the dismissal Plaintiffs could obtain only through a motion directed to the pleadings. (Dkt. 79 at 16).

Plaintiffs' Point V fares no better: their contention that DBGI's February 2026 press release leaves the counterclaims "refuted" and sanctionable is a contested merits-and-intent dispute. (Dkt. 79 at 21). DBGI's position is that the release did not disclose the coordinated conduct the counterclaims allege. This merits dispute cannot be resolved on a bond motion and supplies no basis to treat the merits factor as favoring security.

*Extent and scope of discovery.* Plaintiffs blame the counterclaims for expanding discovery. (Dkt. 79 at 19). The record refutes that. More than a month before DBGI asserted any counterclaim, DBGI's defense to Plaintiffs' claims already required broad discovery into the alleged stock-manipulation scheme. In the parties' September 1, 2026 joint letter, DBGI — defending on the ground that "Plaintiffs were involved in a manipulation of DBGI's stock" and that "it was fraudulently induced to enter the SPA" — proposed document discovery and depositions of Plaintiffs and non-party Bartch, written discovery to twelve New York-based brokerage, transfer-agent, and investor-relations entities, and up to six non-party depositions. (Dkt. 25 at 2-3). As DBGI explained, "the merits are intertwined with limited discovery in advance of the Preliminary Injunction hearing," and the Court "generally agree[d] with Defendants on the scope of discovery." (Dkt. 25 at 3, 4). The breadth of discovery in this case flows from DBGI's defenses to Plaintiffs'

own claims; it is not a cost the counterclaims manufactured, and it cannot be laid at DBGI's feet as a reason for security.

*Expected legal costs.* Plaintiffs' $550,000 is speculative and unsupported, as shown in Point IV.

*Compliance with past orders.* Plaintiffs assert DBGI has defied the injunction. (Dkt. 79 at 21). That contention is disputed and is the subject of a separate contempt motion with its own record. It should be resolved there, on its own evidence, not bootstrapped into a bond. DBGI has otherwise complied with the Court's orders throughout.

## IV. EVEN IF SOME SECURITY WERE WARRANTED, THE $550,000 AMOUNT IS SPECULATIVE, MISCATEGORIZED, AND WOULD DENY DBGI ITS DAY IN COURT.

A Rule 54.2 bond "should not 'seriously impede'" a party's ability to litigate. *Atlanta Shipping Corp. v. Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987). When a plaintiff sought a $469,500 fee bond in *RLS* Assocs., LLC, the court reduced it to $75,000, warning that "a compelled posting of full security risks denying the plaintiff its day in court" and recognizing the "legitimate concern" that an opponent may use "the bond requirement to impose severe financial burdens ... and to prevent the trial from occurring." *RLS Assocs., LLC*, 464 F. Supp. 2d at 224–25. The Second Circuit has cautioned that conditioning court access on substantial security "may be unconstitutional." *Atlanta Shipping*, 818 F.2d at 252. Plaintiffs' demand — a $550,000 bond that, on their own account of DBGI's finances, DBGI cannot post, enforced by striking its pleadings — is the paradigm of a bond weaponized to end the case rather than secure costs. That alone requires denial, or at most a nominal bond.

The amount is also untethered from anything Rule 54.2 secures. "Costs" is a "term of art" limited to the modest categories Congress enumerated in 28 U.S.C. § 1920; they are "limited to

relatively minor, incidental expenses" and are "a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators." *Assocs. Against Outlier Fraud v. Huron Consulting Grp., Inc.*, 817 F.3d 433, 436 (2d Cir. 2016); *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012). A court's discretion over costs "is not a power to evade" that list. *Taniguchi*, 566 U.S. at 572. Yet Plaintiffs' $550,000 is built almost entirely of items that are not taxable costs: projected attorney time at a single practitioner's $750 hourly rate through a ten-day trial (Dkt. 94 ¶ 10), plus $19,500 for trial "[a]ccommodations" of three hotel rooms and lump-sum copying. (Dkt. 94 ¶ 10). These are litigation expenses, not "costs."

Plaintiffs' own authorities do not bridge this gap; they confirm it. Where courts have included attorneys' fees in a Rule 54.2 bond, they did so only because a fee-shifting statute or a contract independently made those fees recoverable — the Copyright Act in *Selletti*, and a contractual fee undertaking in *Kensington* and *RLS Assocs., LLC*. *Selletti*, 173 F.R.D. at 100–01; *Kensington*, 2005 WL 646086, at *1; *RLS Assocs., LLC*, 464 F. Supp. 2d at 224–25. In each, the fees were secured pursuant to an independent entitlement. And in each, the bonded party was foreign or seemingly judgment-proof and its obligation to pay was essentially fixed rather than contingent. In *Kensington*, the secured fees had largely already been incurred in enforcing an existing $56 million judgment that Congo had contractually agreed to pay ($300,000 incurred of the $450,000 security ordered), thus the security was tied to concrete, near-certain enforcement rather than a hypothetical future trial. *Kensington*, 2005 WL 646086, at *2. And in *RLS Assocs., LLC,* the court, even with a contractual fee entitlement, still halved the requested security and imposed it symmetrically on both parties. *RLS Assocs., LLC*, 464 F. Supp. 2d at 225.

None of those features is present here, where Plaintiffs are domestic, any fee obligation turns on a judgment not yet entered, and no symmetrical bond is proposed. That distinction cuts

against Plaintiffs twice. First, the bulk of their $550,000 — projected attorney time, trial lodging, and copying — cannot be bonded as "costs" under Rule 54.2. Second, to the extent they seek those sums as contractual fees under Section 5.9, they must show a *present, non-contingent* entitlement, which, as shown in Point II, they lack: a preliminary injunction has not made them a prevailing party. *See* *Lackey*, 604 U.S. at 207–08.

The projection is also unreliable on its face. It rests on a six-paragraph narrative of anticipated work, and not a single contemporaneous time record or invoice for the fees and costs allegedly accrued through October 18, 2026. (Dkt. 94 ¶¶ 8-10). Indeed, the declaration cannot keep its own numbers straight: it states that fees and costs through October 18, 2026 total $128,250 plus $2,781 (that is, $131,031), yet in the next paragraph states that figure is "$132,344." (Dkt. 94 ¶ 9, ¶ 10(i)). A half-million-dollar bond cannot rest on a forecast that is not supported by any time records or invoices for legal fees and costs already accrued, and that the movant cannot internally reconcile. A party resisting a bond on ability-to-pay grounds bears the burden of its finances, and DBGI will make the appropriate showing if the Court reaches amount; but the threshold defect is Plaintiffs': they have not shown that $550,000 bears any relation to recoverable costs. *Kanongataa v. Am. Broad. Companies, Inc.*, No. 16-CV-7382 (LAK), 2017 WL 4776981, at *2 (S.D.N.Y. Oct. 4, 2017).

## V. THE DEMAND TO STRIKE DBGI'S ANSWER AND COUNTERCLAIMS IS AN IMPROPER SANCTION, AND PLAINTIFFS' RULE 11, SECTION 1927, AND INHERENT-POWER THEORIES ARE PREMATURE.

Plaintiffs ask that, if DBGI does not post the bond, its Answer and Counterclaims be "automatically stricken." (Dkt. 79 at 28). Striking a defendant's pleadings and entering what is effectively a default is "an extreme sanction, to be imposed only in extreme circumstances," and "the most severe sanction which the court may apply." *Hawley v. Mphasis Corp.*, 302 F.R.D. 37,

53 (S.D.N.Y. 2014). It is not imposed absent "willful, ... bad faith, or otherwise culpable" conduct, and only "when the [court] has considered lesser alternatives." *Hawley*, 302 F.R.D. at 53. The Second Circuit vacated an order striking a pleading and granting the opponent's counterclaims by default precisely because the court made no such findings and failed to weigh lesser sanctions, calling it a "drastic remedy that should be imposed only in extreme circumstances." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007). Plaintiffs' demand for *automatic* striking upon nonpayment would skip the findings and lesser-alternatives analysis the law requires.

Plaintiffs also try to inflate the bond with the specter of fee-shifting under Rule 11, 28 U.S.C. § 1927, and the Court's inherent power. (Dkt. 79 at 26). None is ripe. Rule 11's safe harbor is "a strict procedural requirement," and "[a]n informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21-day safe harbor period." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175–176 (2d Cir. 2012). Plaintiffs' October 12 demand letter is exactly that; no Rule 11 motion has been served or filed. Section 1927 reaches "only ... attorneys," not a party like DBGI, and requires a bad-faith finding made with a "high degree of factual specificity." *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143–144 (2d Cir. 2012); *Star Mark*, 682 F.3d at 178. Inherent-power fee-shifting likewise demands specific findings that a claim was without colorable basis and brought in bad faith, and must be "exercised with restraint and discretion" consistent with due process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991). No such motion has been made and no such finding entered. A court cannot secure by bond sanctions that have never been sought, noticed, or adjudicated.

## CONCLUSION

For the foregoing reasons, DBGI respectfully requests that the Court deny Plaintiffs' motion for an order requiring DBGI to post a bond under Local Civil Rule 54.2 in its entirety, and grant such other relief as the Court deems just and proper.

Respectfully,

Dated: New York, New York
November 2, 2026

By: */s/ James W. Christian*

Stephen W. Tountas
Christopher R. Goetz
Kasowitz LLP
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
stountas@kasowitz.com

James W. Christian
ChristianAttar
1177 West Loop South, Ste 1700
Houston, Texas 77027
Tel: (713) 659-7617
jchristian@christianattarlaw.com

*Attorneys for Defendant*

## CERTIFICATE OF WORD-COUNT COMPLIANCE

The undersigned hereby certifies that this memorandum of law complies with the word count limitation under Local Rule 7.1 because, excluding the parts of the document exempted by Local Rule 7.1, this document contains 4,217 words. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this affirmation.

Dated: New York, New York
November 2, 2026

<u>/s/ *James W. Christian*</u>

James W. Christian
ChristianAttar
1177 West Loop South, Ste 1700
Houston, Texas 77027
Tel: (713) 659-7617
jchristian@christianattarlaw.com