# LAW OFFICES OF BARRY M. BORDETSKY

**570 Lexington Avenue, 24th Floor**
**New York, NY 10022**
**Tel.: (212) 688-0008**

**1719 NJ-10, West Wing, Ste. 300**
**Parsippany Troy Hills, NJ 07054**
**Tel.: (973) 998-6596**
**Fax: (973) 937-7850**
***Please respond to NJ address**

**EMAIL: barry@bordetskylaw.com**

**Admitted in NY/NJ**

***Of Counsel, Littman Krooks LLP**


November 12, 2026

**By ECF**
Hon. Jesse M. Furman
United States District Court
For the Southern District of New York
500 Pearl Street, Room 2510
New York, New York 10007

Re: Philip Gaucher et al. v. Digital Brands Group, Inc. (26-cv-6889)

Dear Judge Furman:

Plaintiffs Philip E. Gaucher Jr. and Joey Giamichael respectfully submit this letter to advise the Court of further violations of its October 15, 2026 Order (Dkt. 70) (the "Order") by defendant Digital Brands Group, Inc. ("DBGI") and its Chief Executive Officer, John Hilburn ("Hil") Davis IV. Barely three weeks after the Court warned that DBGI and Mr. Davis were "potentially playing with fire" and that it expects its orders to be complied with "in every way, shape, or form" (Dkt. 91; Tr. 17), DBGI and Davis have again refused to honor Plaintiffs' Conversion Notices and are in contempt of the Order.

In the latest act to circumvent the Order, Davis informed Plaintiffs the company has "no shares left to issue" because the balance of its authorized shares is being held for its lender, Dmitriy Shapiro, through Shakawe. As set forth below, those shares are the very shares the Certificate of Designation and the Securities Purchase Agreement require DBGI to reserve for the Series D holders. Davis and DBGI have demonstrated by their actions the threat of contempt alone is of no concern to them.

## 1. The Order and DBGI's Obligation to Reserve Shares for the Series D

The Order requires DBGI to honor Plaintiffs' Conversion Notices in accordance with the Certificate of Designation ("COD") and the August 8, 2025 Securities Purchase Agreement ("SPA"), as amended on September 18, 2025. It binds DBGI's officers, agents, and those acting in concert with them, including Mr. Davis. Fed. R. Civ. P. 65(d)(2).

The governing documents leave DBGI no room to run out of shares for the Series D:

- **Five-times reserve, allocated pro rata.** "So long as any Series D remain outstanding," DBGI "shall at all times reserve not less than five (5) times" the shares issuable on full conversion at the Floor Price, allocated "pro rata among the Holders" as each Holder's Authorized Share Allocation. COD §12(a) (Dkt. 13-1); *see also* SPA §4.9 (Dkt. 13-2) (reserve to be maintained "at all times until the full conversion or redemption of the Series D"); SPA §3.1(f).

- **Irrevocable reservation letter.** DBGI's September 26, 2025 reservation letter, signed by Mr. Davis, "irrevocably" instructs the transfer agent to hold the reserve for Series D conversions. It directs that conversions be filled from the reserve and, if the reserve is short, from "authorized but unissued shares". It further names the investors as third-party beneficiaries and bars any modification "without the consent of the Investor." (Dkt. 13-6; as Amended (Exh. 1)).

- **Non-circumvention.** DBGI may not, by any "issue or sale of securities, or any other voluntary action, avoid or seek to avoid" its conversion obligations, and must "take all such actions as may be necessary" to issue conversion shares. COD §11; SPA §5.22.

- **What happens if authorized shares run short.** DBGI must "immediately take all action necessary" to increase its authorized shares, hold a stockholder meeting within 60 days, and, in the interim, pay the Holder cash for any shares it cannot deliver, at the five-day average closing price. COD §12(b).

- **No self-help.** DBGI may not refuse to deliver shares "for any . . . reason" absent an injunction obtained on notice and a bond. SPA §4.1(e). The Conversion Notice is "the totality of the procedures" required of a Holder. SPA §4.13.

**2. The November 10 & 11 Conversion Notices and DBGI's Contemptuous Actions**

Plaintiffs executed Conversion Notices dated November 10 and 11, 2026 and delivered them to DBGI, Mr. Davis and DBGI's transfer agent, ClearTrust, LLC. (Exhs. 2 & 3) Mr. Giamichael's November 10, 2026, Conversion Notice was for 25 Series D Shares, convertible to 205,357 common shares. (Exh. 2). Mr. Gaucher's November 11, 2026, Conversion Notice was for 48 Series D Shares, convertible to 394,285 common shares. (Exh. 3)

At 4:20 p.m. on November 11, 2026, after Mr. Giamichael made an inquiry to the transfer agent for the conversion, ClearTrust responded that it was "not able to address" the conversion requests, and directed Plaintiffs to DBGI stating that "Digital Brands has been notified of the items ClearTrust needs for processing." (Exh. 2, p. 3) The open items, in other words, sit with DBGI, not with Plaintiffs.

Davis then explained why. In a series of emails on which he copied ClearTrust, he wrote:

- 4:34 p.m.: "Because we have no shares left to issue, they have either been issued or they are being held in reserve for TA letters. We have 25M shares authorized and there are 11.56M outstanding and the balance are held in reserve with the majority held by Dmitriy via Shakawee per the TA letter per his legal contract." He added: "Since Dmitriy did not raise the floor price on you, perhaps you can ask him to release some of his reserve shares to fill your conversions." (Id. p. 4)
- 4:45 p.m.: Davis writes Mr. Shapiro holds "shares on reserve as part of his ELOC and his $3M note," which are "not available to anyone unless he gives up his reserve" for "your conversions and his conversions." (Id. p.5)

- 5:20 p.m. and 5:56 p.m.: Davis writes an increase in authorized shares requires stockholder approval, "which will take 5 to 8 weeks." (Id. p.6)
- 6:33 p.m., after Mr. Giamichael pointed out that Series D holder Target Capital's conversion had been processed by DWAC that same day: Mr. Davis did "not know" why, speculating that Target's conversion involved "a significantly lower number of shares." (Id. p.8).

**3. DBGI's Refusal Is a Further Violation of the Order**

DBGI's self-created inability theory should be evaluated against the precise terms of the Order and clear-and-convincing evidence of DBGI's and Davis's ongoing violation of it. DBGI has the shares. It has violated the Order by removing them from the reserve for Series D shareholders, and has chosen to give them to Shakawe. This is simply another attempt by DBGI and Davis to circumvent this Court's Order.

By Mr. Davis's own figures, roughly 13.44 million authorized but unissued shares exist (25 million authorized less 11.56 million outstanding. (Exh. 2, p.4) It has earmarked them for Shawake's equity line of credit and $3 million note, ahead of the Series D holders for whom COD §12(a), SPA §4.9, and the irrevocable reservation letters require them to be held. (Exh. 2, p. 5) Plaintiffs never consented to any reallocation of the Series D reserve, as the reservation letter requires. And Mr. Davis's own words ("your conversions and his conversions") confirm that Shakawe is converting out of the reserve while Plaintiffs are told there is nothing left. (Id.) Every share DBGI issues to Shakawe from that reserve is a share taken from Plaintiffs' Authorized Share Allocation. That is the "issue or sale of securities" to "avoid" conversion obligations that COD §11 and SPA §5.22 forbid.

To make matters worse, on the same day DBGI told Plaintiffs no shares existed, it processed Series D holder Target Capital's conversion. (Exh. 2, p.8) The COD requires DBGI to treat the Series D holders alike: the reserve is allocated "pro rata," COD §12(a), and when DBGI "can convert some, but not all" of the Series D submitted, it must convert "a pro rata amount" from each holder, COD § 5(c)(iv). DBGI instead filled one holder's notice and refused Plaintiffs'. That is a choice, not an inability. And it is evidence of continued contempt of this Court's Order.

**Davis has announced non-compliance in writing.** DBGI cannot run out the Share Delivery Deadline after its CEO has told the holders and the transfer agent in writing that the shares will not be issued. That written notice is itself a Triggering Event under COD §6(a)(iv) and violation of the Order. Davis's renewed reference to whether Mr. Shapiro "did not raise the floor price on you" echoes the floor-price episode this Court addressed on October 22, 2026 (Dkt. 91; Tr. 5–7).

**"We need shareholder approval" is no defense.** Any shortfall is self-created by its allocation to Shakawe. DBGI and Davis never gave the holders notice of an Authorized Share Failure (COD §§6(b), 23), never began the stockholder process COD §12(b) required it to start "immediately," and never paid the cash COD §12(b) requires in lieu of shares it says it cannot deliver. Nor did DBGI come to this Court on notice, as SPA §4.1(e) and the Order require.

**DBGI has the means to comply today.** DBGI maintains an effective $100 million shelf registration on Form S-3 and, since April 15, 2026, an at-the-market sales agreement with Aegis Capital Corp. for up to $100 million of common stock. (Dkt. 38-32, p. 9) DBGI can use those facilities to raise the cash needed to make Plaintiffs whole under COD §12(b) immediately. (Id.; Dkt. 101)

**4. Relief Requested**

DBGI and Davis are acting in further contempt of the Order. Plaintiffs respectfully request that the Court take these continued violations into account in resolving Plaintiffs' pending contempt motion, including by imposing compensatory, punitive and coercive daily sanctions on DBGI and Mr. Davis until compliance and awarding Plaintiffs their attorneys' fees and costs associated with all aspects of the contempt motion. (COD §19(a); SPA §5.9).

As to the DBGI's and Davis's recent actions addressed herein, Plaintiffs respectfully request the Court include in its order of contempt the following:

1. Directing DBGI and Davis, within one Trading Day, to deliver to Plaintiffs via DWAC the 205,357 and 394,285 shares of common stock specified in their November 10 and November 11, 2026, Conversion Notices, using authorized but unissued shares, including shares held in reserve for Shakawe or any other person, and to provide ClearTrust whatever it requires to process them;

2. To the extent DBGI and Davis contend DBGI cannot issue those shares, Order DBGI and Davis to pay each Plaintiff, within three Trading Days, cash equal to the number of shares specified in that Plaintiff's Conversion Notice multiplied by the five-day average Closing Sale Price under COD §12(b), calculated separately for each notice in accordance with the measurement, respectively, from November 3 and 4, 2026;

3. Requiring DBGI and Davis to replace all reserve shares that were removed for the benefit of Shakawe; and

4. Direct DBGI and Davis to commence immediately the steps required by COD §12(b) to increase its authorized shares, and to provide every future Conversion Notice the same treatment as any other holder's.

Plaintiffs thank the Court for its consideration of this urgent matter.

Respectfully submitted,

**Law Offices of Barry M. Bordetsky**

By: ____________________
Barry M. Bordetsky

c: Stephen W. Tountas (via ECF)