quinn emanuel trial lawyers | boston
111 Huntington Avenue, Suite 520, Boston, Massachusetts 02199-7626 | TEL (617) 712-7100 FAX (617) 712-7200

WRITER'S DIRECT DIAL NO.
**(617) 712-7119**

WRITER'S EMAIL ADDRESS
**ericwolkoff@quinnemanuel.com**

November 11, 2026

**VIA ECF**

The Honorable Jesse M. Furman
United States District Court, Southern District of New York
500 Pearl Street, Room 2510
New York, NY 10007

Re: *Bartch v. Digital Brands Group, Inc.*, No. 26-cv-8734 (JMF); [rel. 26-cv-06889]

Dear Judge Furman:

On behalf of Plaintiff David Joshua Bartch in the above-captioned action, we write to share new information learned from the records that ClearTrust LLC produced under the Court's November 10 Order.[1] Dkt. 39. At the November 10 conference, the Court denied Defendant Digital Brands Group, Inc.'s ("DBGI") application for a temporary restraining order (Dkt. 31, the Motion or "Mot.") and reserved judgment on its request for a preliminary injunction. The Court also ordered ClearTrust, DBGI's transfer agent, to produce its records from November 5 through 7 on conversions of DBGI's Series D preferred stock, issuances under DBGI's at-the-market ("ATM") program, and daily share register reports. Dkt. 39.

ClearTrust has now produced those records. **They show that on November 6, the day DBGI accuses Plaintiffs of manipulating its stock, DBGI issued new common shares equal to about 80% of its then-outstanding common shares through its ATM and also permitted significant Series D conversions from another investor. All of those shares were sold that same day.** DBGI's Motion does not mention them. The records, produced with this letter, thus bear on two points central to DBGI's preliminary injunction request, which remains pending: its account of the November 6 trading and its claim of irreparable harm. Plaintiffs submit them to supplement the preliminary injunction record.

In its Motion, DBGI attributes the heavy November 6 trading to Plaintiffs and others. It asserts that the trading volume exceeded 85 million shares before noon, and that DBGI had about four million shares outstanding. Mot. 1, 4; Dkt. 33 ("Davis Decl.") ¶¶ 5-6. ClearTrust's records show

[1] Unless otherwise noted, docket citations are to No. 26-cv-08734.

that a large volume of shares entered the market that day through two channels that DBGI itself controlled or approved. The Motion and supporting declarations do not mention either one.

***ATM sales***. On November 6, DBGI's ATM sales agent, Aegis Capital Corp. ("Aegis"), sold 1,977,321 shares of DBGI common stock. Ex. 1.[2] Aegis reported the sales the same day, and Mr. Davis was copied on the report. *Id.* Aegis sold these shares under a July 30 Instruction Letter signed by Mr. Davis. Ex. 2. That letter allowed Aegis to direct ClearTrust to issue up to 3.5 million shares without further approval from DBGI. *Id.* It describes those shares as "to be sold by the Company."

***Target conversions***. Target Capital 16, LLC ("Target") holds DBGI Series D preferred shares. On November 6, Target submitted eleven notices to convert its preferred stock into 1,772,464 common shares. Exs. 3, 4. Mr. Davis approved eight of those notices that day, covering 1,177,525 shares. Exs. 5, 7. In a letter dated November 6, Target's broker told ClearTrust that it had sold all 1,177,525 shares. Ex. 6.

***Total.*** Together, the ATM sales (1,977,321 shares) and the eight conversions Mr. Davis approved on November 6 (1,177,525 shares) come to 3,154,846 newly issued shares, all sold on November 6. Exs. 1, 6.[3] ClearTrust's register shows 3,945,133 DBGI shares outstanding before November 5. Ex. 7; *see also* Mot. 4 (roughly four million shares of DBGI stock in total float). In other words, on November 6, DBGI sent into the market, or approved sending, new shares equal to about 80% of its then-outstanding stock. DBGI states that no trading day in the prior month topped one million shares. Mot. 1. These sales alone were more than triple that volume. DBGI's Motion and supporting declarations do not mention these sales or conversions.

***Irreparable harm***. These records also bear on irreparable harm in both actions. DBGI told the Court that a falling share price threatens its listing and survival. Mot. 2, 6-8; Davis Decl. ¶¶ 7, 9. It blames Plaintiffs and others for the November 6 share price drop. Mot. 3; Davis Decl. ¶ 4. But issuing and selling more than three million new shares in a single day itself helps explain that drop. If DBGI's own sales caused or contributed to the decline, an injunction against Plaintiffs would not prevent the harm DBGI describes.

* * *

We respectfully submit these records for the Court's consideration and are available if the Court has questions.

---

[2] All references to "Ex." are to the exhibits attached to the Declaration of Eric D. Wolkoff in Support of Plaintiff's Letter Concerning ClearTrust LLC Production, dated November 11, 2026, filed herewith.

[3] As to the converted Target shares, ClearTrust issued the shares on November 9, but a holder like Target can sell converted shares before issuance and deliver them later to settle the trade. The eight notices fit that pattern. Target's broker reported selling the shares on November 6, and ClearTrust delivered them to that broker on Monday, November 9, the standard settlement date for November 6 trades. (Exs. 3, 6, 9).

Respectfully submitted,

*/s/ Eric D. Wolkoff*

Eric D. Wolkoff

cc: All parties via ECF

Defendant DBGI shall file any response to this letter by November 16, 2026.

SO ORDERED.

November 13, 2026