UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILIP E. GAUCHER, JR., et al.,

Plaintiffs,

v.

DIGITAL BRANDS GROUP, INC.,

Defendant.

CIVIL ACTION NO.: 26 Civ. 6889 (JMF) (SLC)

**OPINION AND ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

In this action arising from the alleged failure of Defendant Digital Brands Group, Inc. ("DBGI") to convert shares of its common stock into shares of its common stock for the benefit Plaintiffs Philip E. Gaucher, Jr. ("Mr. Gaucher") and Joey Giamichael ("Mr. Giamichael," together, "Plaintiffs"), are the parties submissions in response to the Court's Order to Show Cause why DBGI should not be sanctioned for failing to have its representative, John Hil Davis IV ("Mr. Davis") appear in person for a settlement conference on September 29, 2026 (the "Settlement Conference"). (Dkt. No. 53 (the "OTSC"); see Dkt. Nos. 75–75-2; 93–96-6). For the reasons set forth below, the Court finds that an award of sanctions against DBGI in the amount of **$3,651.49**, to reimburse Plaintiffs for the expenses they incurred to travel to the Settlement Conference, is appropriate.

## II. BACKGROUND

We refer the reader to Plaintiffs' Amended Complaint for background on the events that precipitated this action and for a summary of Plaintiffs' claims. (Dkt. No. 7). We discuss only the background necessary to resolve the OTSC.

On September 1, 2026, the Honorable Jesse M. Furman referred this breach of contract action to the undersigned for purposes of conducting a settlement conference. (Dkt. No. 26). On September 11, 2026, the Court held a telephone conference with the parties' counsel for purposes of scheduling a settlement conference. (Dkt. No. 27; minute entry dated Sept. 11, 2026 (the "Sept. 11 Conference")).

During the Sept. 11 Conference, the parties agreed that an in-person settlement conference would be held on either September 29, 2026 or October 28, 2026, depending on whether the Honorable Jesse M. Furman would conduct a hearing on Plaintiffs' motion for a preliminary injunction (the "PI Motion") on November 10, 2026. (Dkt. No. 34 (the "Scheduling Order")). The Scheduling Order states, inter alia, that: (1) the conference would take place in person (id. at 1); (2) Plaintiffs were to make a settlement demand to which DGBI was to provide a response before the conference (id. at 2); (3) in paragraph 3 of the attached standing order (id. at 5–7 the "Standing Order"),[1] "[e]ach party must attend the settlement conference in the format prescribed by the Court, accompanied by that party's lead attorney(s)" (id. at 5); and (4) in paragraph 7(b) of the Standing Order ("Paragraph 7(b)"), a client's "attendance by telephone may be permitted if the party lives and works more than 100 miles from the Courthouse and it would be a great hardship for the party to attend the conference on any date." (Id. at 6 (emphasis added)). The Standing Order also warned the parties that failure to attend the Settlement Conference "with all of the required persons—counsel, [and] the client(s), . . . —that party may

[1] The Scheduling Order provides that "[t]he parties must read the Court's [Standing Order], which is attached and incorporated by reference." (Dkt. No. 34 at 1–2)

be required to reimburse all of the other parties for their time and travel expenses, and may face other sanctions." (Id. at 7).

On September 25, 2026, Judge Furman informed the parties that an evidentiary hearing on the PI Motion was not necessary, cancelled the hearing on November 10, 2026, and directed the parties to appear for oral argument on the PI Motion on October 13, 2026. (Dkt. No. 41). On September 25, 2026, the parties informed the Court that "the parties have agreed that they would prefer to proceed with the settlement conference on September 29, 2026[.]" (Dkt. No. 43). The same day, September 25, 2026, the Court informed the parties that the Settlement Conference would proceed in person on September 29, 2026, that the Standing Order remained in effect, and that the parties' pre-mediation letters were due by September 28, 2026 at 1:00 p.m. (Dkt. No. 42 (the "Sept. 25 Order")). No party requested permission to participate in the Settlement Conference remotely.

On September 28, 2026, Defendant submitted its pre-mediation letter in which it stated that DBGI's principal, Mr. Davis, would appear at the Settlement Conference by telephone, not in person. Defendant's letter did not seek permission for Mr. Davis to participate by telephone, however. When the Court reminded Defendant's counsel, via email, that the Settlement Conference was in person, as set forth in the Scheduling Order and the Sept. 25 Order (Dkt. No. 94-5), DBGI's counsel responded that Mr. Davis resided in Texas and invoked Paragraph 7(b) of the Scheduling Order as a basis for his remote participation because he had been unable to secure a flight to New York, but that counsel would attend in person "with full settlement authority." (Dkt. No. 94-8). Notwithstanding the Scheduling Order and the Sept. 25 Order, Defendant's counsel professed that the requirement of Mr. Davis' in-person attendance came as

"a surprise." (Dkt. No. 94-6). Plaintiffs' counsel objected to Mr. Davis's intention not to appear in person and requested compensation to Plaintiffs for their travel costs. (Dkt. No. 94-9).

On September 29, 2026, the Court conducted the Settlement Conference. (Dkt. minute entry dated Sept. 29, 2026). Plaintiffs traveled from their residences outside the continental United States to appear in person; Mr. Davis did not appear in person but rather by telephone, although two attorneys appeared as counsel on DBGI's behalf. (Id.; see Dkt. No. 94 ¶ 22). The parties did not reach a settlement at the Settlement Conference. The Court has scheduled a second settlement conference — in person — on January 7, 2027. (Dkt. No. 105).

On October 6, 2026, the Court issued the OTSC, requiring DBGI, with support from a declaration from Mr. Davis, to explain why it should not be sanctioned pursuant to Federal Rule of Civil Procedure 16(f)(1) for failure to comply with the Scheduling Order and the Standing Order. (Dkt. No. 53). On October 16, 2026, DBGI filed its response, with a declaration from Mr. Davis. (Dkt. Nos. 75; 75-1 (the "Davis Declaration")). In his Declaration, Mr. Davis attests that he "understood that he would be able to participate by telephone" in the Settlement Conference — although he does not provide the basis for that understanding — and asserts that in-person attendance would have been a hardship because "on less than one day's notice [he] was unable to arrange care" for the service dogs in his custody. (Dkt. No. 75-1 ¶¶ 5, 10).

With the Court's permission (Dkt. No. 56), on October 27, 2026, Plaintiffs filed a response, supported by their declarations as well as a declaration from their counsel, and exhibits, including email correspondence and travel receipts. (Dkt. Nos. 93–96-6).

## III. DISCUSSION

### A. Legal Standard

"A court may not require litigants to settle an action." Ruradan Corp. v. City of New York, No. 22 Civ. 3074 (LJL), 2024 WL 1116085, at *2 (S.D.N.Y. Mar. 14, 2024) (citing Kothe v. Smith, 771 F.2d 667, 669 (2d Cir. 1985). A court may, however, "require parties to appear for a settlement conference, and [] it is entirely appropriate for a court to impose sanctions pursuant to Rule 16(f) if a party fails to do so." Mordechai v. St. Luke's-Roosevelt Hosp. Ctr., No. 99 Civ. 3000 (RWS) (THK), 2001 WL 699062, at *2 (S.D.N.Y. June 20, 2001) (collecting cases); see Dan River, Inc. v. Crown Crafts, Inc., No. 19 Civ. 3178 (LMM) (AJP), 1999 WL 287327, at *2 (S.D.N.Y. May 7, 1999) (explaining that parties "cannot be allowed to flout" settlement conference scheduling orders).

It is also "well settled that a magistrate judge has the authority to issue an order containing sanctions in connection with a matter that has been properly referred to the magistrate judge." Ruradan Corp., 2024 WL 1116085, at *2 (collecting cases). "Pursuant to Federal Rule of Civil Procedure 16(f) and its inherent power, a . . . court may issue an order imposing sanctions on a party or his attorney for 'failing to appear at a scheduling or other pretrial conference' or 'failing to obey a scheduling or other pretrial order.'" Id.; see Mickle v. Morin, 297 F.3d 114, 125 (2d Cir. 2002) (recognizing that district courts have inherent power to sanction litigants or counsel "for disobeying the court's orders"). "An award of sanctions under the court's inherent power must be based on clear evidence and must be accompanied by a high degree of specificity in the factual findings." Id. at 125–26. "Before imposing sanctions, the court must

afford the person it proposes to sanction due process, i.e., notice and opportunity to be heard." Id. at 126.

"No showing of bad faith is required to impose sanctions under Rule 16(f)(1)(C)." Ruradan Corp., 2024 WL 1116085, at *2. "The fact that a pretrial order was violated is sufficient to allow some sanction." Mahoney v. Yamaha Motor Corp. U.S.A., 290 F.R.D. 363, 366-67 (E.D.N.Y. 2013). "Appropriate sanctions imposed pursuant to Rule 16(f) and the [C]ourt's inherent power include a requirement to pay opposing counsel's costs as well as a fine payable to the Clerk of the Court." Ruradan Corp., 2024 WL 1116085, at *2. Reimbursement of the opposing party's travel expenses may also be a reasonable sanction. See, e.g., Zama Cap. Advisors LP v. Universal Entm't Corp., No. 24 Civ. 1577 (MKV), 2025 WL 3525044, at *6 (S.D.N.Y. Dec. 9, 2025) (awarding sanctions including travel expenses based on plaintiffs' last-minute cancellation of appearance at mediation).

**B. Application**

**1. Notice and Opportunity to Be Heard**

As set forth above, DBGI received adequate notice — in the Standing Order and the OTSC — of the possibility of sanctions for non-compliance with the Court's Orders had has had an opportunity to be heard, both before and after the Settlement Conference, concerning Mr. Davis' failure to appear in person at the Settlement Conference. (Dkt. Nos. 34; 53). DBGI does not argue otherwise. (See Dkt. No. 75).

**2. <u>Sanctions Are Appropriate Under Rule 16(f) and the Court's Inherent Authority</u>**

DBGI advances three arguments in opposition to an award of sanctions, none of which are persuasive. (Dkt. No. 75).

First, DBGI argues that "the Court's orders accommodate the appearance Mr. Davis made", <u>i.e.</u>, his telephonic participation in the Settlement Conference. (Dkt. No. 75 at 5 ¶¶ 11–12). DBGI points to Paragraph 7(b) of the Standing Order, which provides that a client's "attendance by telephone <u>may</u> <u>be</u> <u>permitted</u> if the party lives and works more than 100 miles from the Courthouse and it would be a great hardship for the party to attend the conference on any date." (Dkt. No. 34 at 6 ¶ 7(b) (emphasis added); <u>see</u> Dkt. No. 75 at 5 ¶ 12). DBGI ignores, however, that the Court never "permitted" Mr. Davis to attend remotely, and indeed, he never even <u>asked</u> the Court for that permission. DBGI cannot seriously believe Paragraph 7(b) means that Mr. Davis could have unilaterally "permitted" himself to appear remotely.

The entire record of communications and orders leading up to the Settlement Conference made clear, in no uncertain terms, that Mr. Davis was to attend the Settlement Conference in person. The Scheduling Order informed Mr. Davis not once but twice that he was required to attend in person. (Dkt. No. 34 at 1, 5 ¶ 3). The Sept. 25 Order reiterated that the parties were required to appear in person at the Settlement Conference. (Dkt. No. 42 at 1). Plaintiffs' counsel's email to DBGI's counsel the same day referenced "meeting everyone in person" at the Settlement Conference. (Dkt. No. 94-3). The parties' joint letter — to which DBGI consented — requesting waiver of opening presentations "in the presence of all parties" also contemplated in person attendance. (Dkt. No. 45). Notwithstanding the possibility that a party could <u>request</u> to

"be permitted" to participate remotely, DBGI's use of the verb "accommodate" (Dkt. No. 75 at 5 ¶ 12) is doing a lot of work to obscure DBGI's implicit admission that it was never "permitted" — let alone requested permission — for Mr. Davis to appear by telephone. (Dkt. No. 34 at 6 ¶ 7(b)). Given this record, and having heard Mr. Davis during the Settlement Conference, the Court finds his attestation that he "understood" he could participate by telephone not credible. See Liebowitz v. Bandshell Artist Mgmt., 6 F.4th 267, 281-82 (2d Cir. 2021) (affirming district court's credibility determinations supporting sanctions award). Even if we believed that Mr. Davis did not appreciate until September 28, 2026 that he was required to appear at the Settlement Conference in person the next day, the information that Plaintiffs have provided concerning flight options for Mr. Davis to travel to New York in time for the Settlement Conference (Dkt. Nos. 94 ¶¶ 17–19; 94-9) also undermines his attestation that "[t]here was no flight that could have brought me to the Courthouse in time[.]" (Dkt. No. 75-1 ¶ 7). See Zama Cap. Advisors, 2025 WL 3525044, at *5 (awarding sanctions after finding that plaintiffs' contentions were "simply not credible"). Accordingly, none of the Court's Orders "accommodate[d]" — in DBGI's words — Mr. Davis' remote participation in the Settlement Conference. (Dkt. No. 75 at 5 ¶ 12).

Second, DBGI argues that Mr. Davis' "noncompliance was 'substantially justified'" because it was too late to request an adjournment and the Court had cancelled the alternative October 28, 2026 settlement conference. (Dkt. No. 75 at 6 ¶¶ 13–14). Again, despite being aware since September 11, 2026 — the date of the Scheduling Order — and no later than the Sept. 25 Order, of the required in-person appearance, which required Plaintiffs to incur the costs to travel to New York as well, DBGI never alerted Plaintiffs that Mr. Davis was unable to travel to New York, let alone request permission for him to participate remotely under the Standing Order.

(See Dkt. No. 34). Waiting until the very last minute — mid-day on September 28, 2026 — to notify Plaintiffs and the Court that Mr. Davis simply would not show up in person, is the kind of "vexatious and [] oppressive tactic" that warrants sanctions. Zama Cap. Advisors, 2025 WL 3525044, at *5. (See Dkt. Nos. 94-4; 94-8). By their conduct, DBGI and Mr. Davis caused Plaintiffs "to unnecessarily incur expenses for no good reason" when the Settlement Conference half-heartedly proceeded with Mr. Davis only on the telephone. Fisher v. SmithKline Beecham Corp., No. 07 Civ. 347A (F), 2008 WL 4501860, at *7 (W.D.N.Y. Sept. 29, 2008) (sanctioning party and counsel under court's inherent authority for surprising opposing party by filing summary judgment motion the day before mediation, derailing mediation and causing opposing party to incur unnecessary travel and preparation expenses). To the extent that Mr. Davis belatedly raised the "hardship" on the service dogs in his custody (Dkt. No. 75-1 ¶ 10), we note that DBGI did not raise this concern in any of its correspondence or filings before the Settlement Conference. However commendable Mr. Davis' efforts to raise service dogs may be, his post-hoc rationalization only further compromises his credibility before this Court. Finally, while the Court acknowledges that Mr. Davis did participate in the Settlement Conference by telephone, we cannot help but conclude, from the brevity of the Settlement Conference, that it diminished the possibility of a productive dialogue concerning any resolution of the parties' disputes, which have only multiplied since the Settlement Conference. (See, e.g., Dkt. Nos. 77 (Plaintiffs' motion for bond); 80 (DBGI's motion for civil contempt); 109 (DBGI's motion for temporary restraining order)).

Third, DBGI's appeal to the Court's "discretion" to award no, or "at most, a minimal" sanction similarly fails. (Dkt. No. 75 at 8 ¶ 17). DBGI describes its noncompliance with the Court's

orders as "an isolated, single-occasion event rather than a sustained course of conduct." (Id.) As noted above, however, DBGI's violation of not one, but two, court orders "is sufficient to allow some sanction." Mahoney, 290 F.R.D. at 366; see Ruradan Corp., 2024 WL 1116085, at *3 (imposing sanctions for violation of single court order).

Finally, the cases on which DBGI relies do not dissuade us from awarding sanctions here. In Reilly v. City of New York, the court had not entered any order relating to the mediation in which defendants failed to participate, unlike here, where the Court entered not one but two orders requiring DBGI's representative to attend in person. No. 23 Civ. 521 (AS) (VF), 2025 WL 2081551, at *2 (S.D.N.Y. July 24, 2025). In Erdman v. Victor, in deciding to give warnings and not to impose a monetary fine on contumacious attorneys who repeatedly missed court deadlines and appearances, the court noted that it had "not previously warned specifically of the consequences of noncompliance[.]" 345 F.R.D. 60, 64 (S.D.N.Y. 2024). Here, as DBGI even acknowledges, the Standing Order specifically warned the parties — in two places — that the consequences for failing to attend the Settlement Conference "with all of the required persons" could include reimbursement of "all of the other parties for their time and travel expenses, and . . . other sanctions." (Dkt. No. 34 at 7 ¶ 8; see id. at 4; see also Dkt. No. 75 at 3 ¶ 6 (quoting Standing Order)). The fact that DBGI has not — yet, at least — violated more orders is hardly reason to spare DBGI from sanctions.

Accordingly, for these reasons, we find that an award of sanctions is appropriate.

### 3. Appropriate Sanction Award

Having found that the imposition of sanctions is appropriate for DBGI's non-compliance with the Scheduling Order and the Sept. 25 Order, we must now determine the appropriate

sanction. We follow those courts awarding, as a sanction against a party who failed to comply with an order to appear at an in-person settlement conference, reimbursement of travel costs incurred by the party who traveled to appear at the conference. See Zama Cap. Advisors, 2025 WL 3525044, at *6 (awarding $29,790.51 in travel expenses to party who traveled to appear in person at mediation); Lopez v. N.Y.C. Dep't of Educ., No. 17 Civ. 9205 (RA) (BCM), 2023 WL 12078787, at *6 (S.D.N.Y. May 4, 2023) (awarding $1,100 to pro se party who traveled to appear in person at settlement conference). "[B]ut for" DBGI's misconduct — i.e., if it had requested no later than September 25, 2026 that the Court change the format of or reschedule the Settlement Conference — Plaintiffs could have avoided those expenses. Zama Cap. Advisors, 2025 WL 3525044, at *6. Plaintiffs have documented that they incurred a total of $3,651.49 to travel to New York for the Settlement Conference — $1,753.23 for Mr. Giamichael and $1,898.26 for Mr. Gaucher. (Dkt. Nos. 93 at 29; 95 ¶¶ 2–9; 95-1–95-7; 96 ¶¶ 2–9; 96-1–96-7). We therefore conclude that requiring DBGI to reimburse Plaintiffs for those expenses pursuant to Rule 16(f)(1)(A) and (C) is "unquestionably and wholly warranted." Zama Cap. Advisors, 2025 WL 3525044, at *6.

To the extent that Plaintiffs also request an award of their attorneys' fees (Dkt. No. 93 at 29–30), we find that the size of the travel expenses reimbursement sanctions alone is sufficient to convey to DBGI the seriousness of its violations of the Court's Orders while not being overly punitive, given that the Settlement Conference did go forward, albeit in a less productive format. See Yukos Cap. S.A.R.L. v. Feldman, 977 F.3d 216, 235 (2d Cir. 2020) ("The imposition of sanctions pursuant to a court's inherent authority is truly discretionary."); In re Plumeri, No. 10-10050 (MG), 2010 WL 3087685, at *4 (Bankr. S.D.N.Y. Mar. 25, 2010), aff'd, 434 B.R. 315 (S.D.N.Y. 2010)

(noting federal courts' "considerable discretion in determining the amount of sanctions to award").

## IV. CONCLUSION

For the reasons set forth above, a sanction against DBGI for violation of the Court's Scheduling Order and the Sept. 25 Order is appropriate. By **December 1, 2026**, DBGI must pay Mr. Gaucher $1,898.26 and Mr. Giamichael $1,753.23, and the parties shall file a joint letter on the docket confirming payment.[2]

Dated: New York, New York
November 13, 2026

SO ORDERED.

**SARAH L. CAVE**
**United States Magistrate Judge**

[2] To the extent that DBGI were to file objections to this Opinion and Order, that would not stay DBGI's obligation to make timely payment, absent a stay from Judge Furman. See Ruradan Corp., 2024 WL 1116085, at *2 n.1.