UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILIP E GAUCHER, JR. et al.,

Plaintiff,

-v-

DIGITAL BRANDS GROUP, INC.,

Defendant.

26-CV-6889 (JMF)

MEMORANDUM OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

In this breach-of-contract dispute, familiarity with which is presumed, Plaintiffs and Counter-Defendants Philip E. Gaucher, Jr. and Joey Giamichael ("Plaintiffs") move, pursuant to Rule 54.2 of the Local Civil Rules, for an order requiring Defendant and Counter-Claimant Digital Brands Group Inc. ("DBGI" or "Defendant") to post a $550,000 bond as security for their costs and attorneys' fees. *See* ECF No. 77. For the reasons that follow, the Court agrees that DBGI should be required to post a bond, but only in the amount of $175,000.

## BACKGROUND

Plaintiffs are two investors who hold Series D Convertible Preferred Stock in DBGI. *See* ECF No. 7 ("Compl."), ¶ 2. In brief, they allege in this case that DBGI has breached its obligations under a securities purchase agreement ("SPA") to convert their Series D Convertible Preferred Stock into common stock. *See id.* ¶¶ 1-2, 9; *see also* ECF No. 13-2 ("SPA"). DBGI responded by asserting a host of counterclaims, including breach of contract, fraudulent inducement, and violations of the Securities Exchange Act. *See* ECF No. 61 ("Answer"), ¶¶ 40-

44, 50-77, at 30-38.[1] On October 13, 2026, the Court issued an oral opinion granting Plaintiffs' motion for a preliminary injunction requiring DBGI to honor Plaintiffs' requests for conversion. *See* ECF No. 71 ("Oct. 13, 2026 Tr."); *see also* ECF No. 70. Since then, the parties have filed a host of additional motions, including this motion and a motion filed by Plaintiffs to hold DBGI in contempt for failure to comply with the preliminary injunction. *See* ECF Nos. 80, 110, 117.

**DISCUSSION**

Local Civil Rule 54.2 provides, in relevant part, that "[t]he court, on motion or on its own initiative, may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate." Districts courts have broad discretion in deciding whether, pursuant to that Rule, a party should be ordered to post a bond for costs and attorney's fees. *See Selletti v. Carey*, 173 F.3d 104, 110-11 (2d Cir. 1999). In deciding whether a bond is appropriate, district courts generally consider the following factors:

> (1) the financial condition and ability to pay of the party who would post the bond; (2) whether that party is a non-resident or foreign corporation; (3) the merits of the underlying claims; (4) the extent and scope of discovery; (5) the legal costs expected to be incurred; and (6) compliance with past court orders.

*RLS Assocs., LLC v. United Bank of Kuwait PLC*, No. 01-CV-1290 (CSH), 2005 WL 578917, at *1 (S.D.N.Y. Mar. 11, 2005) (quoting *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.,* 207 F.R.D. 23, 24 (E.D.N.Y. 2001)); *see Sea Trade Co. Ltd. v. FleetBoston Fin. Corp.,* No. 03-CV-10254 (JFK), 2008 WL 161239, at *1 (S.D.N.Y. Jan. 15, 2008). "Each factor does not need to be considered in every case," *Rice v. Musee Lingerie, LLC*, No. 18-CV-9130, 2019 WL 2865210, at *1 (S.D.N.Y. July 3, 2019) (Nathan, J.), and a court does not err in "failing to consider, or considering and deviating from," these "discretionary factors," *United States v. M/Y Amadea*,

---

[1] In its Answer, DBGI duplicates paragraph numbers when referring to its Counterclaims. *See* ECF No. 61. To avoid confusion, the Court identifies both paragraph numbers and page numbers when citing to DBGI's Answer.

No. 23-CV-9304 (DEH), 2025 WL 3237891, at *2 (S.D.N.Y. Nov. 20, 2025). In some cases, the "lack of assets is itself sufficient to warrant attachment of costs under Rule 54.2." *Beautiful Jewellers Priv. Ltd. v. Tiffany & Co.*, No. 06-CV-3085 (KMW) (FM), 2008 WL 2876508, at *2 (S.D.N.Y. July 21, 2008) (quoting *Sea Trade*, 2008 WL 161239, at *2). *But see Khaldei v. Kaspiev*, No. 10-CV-8328 (JFK) (GWG), 2014 WL 7373383, at *2 (S.D.N.Y. Dec. 30, 2014) (observing that courts should "rely solely" on the lack of assets in ordering the posting of a bond only "in the most compelling circumstances" (internal quotation marks omitted)).

In this case, all but one of the discretionary factors favor Plaintiffs' request for a bond. First and foremost, DBGI is, by its own admissions, in financial straits. *See* ECF No. 38-32, at 9 (SEC 10-Q filing confirming that DBGI "has not generated profits since inception and has sustained net losses of $8,983,422" for the three months preceding June 30, 2026, and that "the Company has lacked sufficient liquidity to satisfy obligations as they come due"); *id.* at 47 (representing that DBGI's "existing cash resources and planned operations . . . may not be sufficient to fund operations for at least twelve months").[2] And since the start of this litigation, the situation has only worsened. *See* ECF No. 107-1, at 3 (DBGI reporting an accusation that it defaulted on a $1 million payment due October 23, 2026); ECF No. 110, at 7 (reporting a decline in stock price that "places DBGI at imminent risk of delisting from The Nasdaq Stock Market"). Just as there is a real risk that DBGI would be unable to satisfy an adverse judgment in this case, *see* Oct. 13, 2026 Tr. 37-38 (finding "[P]laintiffs have provided concrete evidence confirming

[2] DBGI has also acknowledged its difficult financial situation in a related case filed by a different investor. *See Bartch v. Digital Brands Group, Inc.*, Dkt No. 26-CV-8734, ECF No. 23, at 28 (conceding that "[f]orcing DBGI to convert [the shares held by the plaintiff in that case] would financially jeopardize DBGI"); *see also id.* ECF No. 31, at 2 (noting, in connection with a motion for emergency relief DBGI filed in both cases, the "precarious nature of DBGI's financial situation").

the volatility of [D]efendant's stock and the risk that DBGI will not be able to pay damages at the conclusion of the litigation" (cleaned up)), there is a risk that DBGI would be unable to honor an award of costs and attorneys' fees at the conclusion of this litigation, *see RLS Assocs.,* 2005 WL 578917, at *1-2. Accordingly, the first factor weighs in favor of Plaintiffs' request.[3]

By contrast, the second factor — whether the party is a non-resident or foreign corporation — weighs against requiring DBGI to post security. *See RLS Assocs.,* 2005 WL 578917, at *1. In general, courts find that this factor favors the party requesting bond where "foreign entit[ies] . . . have virtually no attachable assets in the United States." *Kensington Int'l Ltd. v. Republic of Congo*, No. 03-CV-4578 (LAP), 2005 WL 646086, at *2 (S.D.N.Y. Mar. 21, 2005). Here, although DBGI is incorporated in Nevada, "there is no question that [it] would be subject to the jurisdiction of the federal court system should a judgment against [DBGI] be entered." *Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, No. 08-CV-01533, 2010 WL 3452375, at *4 (S.D.N.Y. Sept. 1, 2010). Accordingly, the second factor cuts against Plaintiffs.

Third, the Court has already concluded that Plaintiffs are likely to succeed on the merits of their breach-of-contract claims, *see* Oct. 13, 2026 Tr. 33-36, and DBGI's subsequently filed counterclaims, *see* Answer ¶¶ 40-77, at 30-38, do not materially change the legal landscape. First, the SPA's plain language precludes DBGI from refusing to perform based on allegations of fraud or prior material breach without first obtaining a court-ordered injunction obtained on notice, together with a posted bond. SPA § 4.1(e). Additionally, despite multiple opportunities, *see, e.g.*, ECF Nos. 30-31 (in opposition to Plaintiff's preliminary injunction motion); ECF No.

[3] DBGI argues that, before granting Plaintiffs' motion for security, the Court should afford it an opportunity to "make a further showing of its ability to pay." ECF No. 100 ("Def.'s Opp'n"), at 8. But DBGI had ample opportunity to make such a showing in opposition to this motion and provides no good reason it should be afforded another bite at that apple.

71 (at the preliminary injunction argument); ECF No. 99 (in opposition to Plaintiffs' contempt motion); ECF Nos. 100-01 (in opposition to this bond motion); ECF Nos. 110-12 (in DBGI's preliminary injunction and temporary restraining order briefing); ECF No. 117 (at another conference), DBGI has to date not supplied even basic factual support for its allegations that Plaintiffs engaged in a market manipulation scheme or fraudulently induced contract formation, *see Lebanon Cnty. Emps.' Ret. Fund v. Collis*, 287 A.3d 1160, 1215 (Del. Ch. 2022) (concluding that a party relying on "fraudulent concealment" must "plead the circumstances supporting the doctrine with particularity").

More immediately relevant, it follows that Plaintiffs are likely to be entitled, when final judgment is entered, to recover their costs and attorney's fees in connection with this action. Section 5.9 of the SPA provides that, "[i]f any party shall commence an Action to enforce any provisions of the Transaction Documents, then, in addition to the obligations of the Company elsewhere in this Agreement, the prevailing party in such Action shall be reimbursed by the non-prevailing party for its reasonable attorneys 'fees [*sic*] and other costs and expenses incurred with the investigation, preparation and prosecution of such Action." SPA § 5.9. Section 4.8 of the SPA separately obligates DBGI to hold Plaintiffs harmless from "court costs and reasonable attorneys 'fees [*sic*]" they "may suffer or incur as a result of or relating to . . . any breach of any of the . . . covenants or agreements made by the Company." *Id.* § 4.8. Given that Plaintiffs are likely to prevail on the merits of their breach-of-contract claims, it follows that they are likely to be entitled to recover fees and costs from DBGI. Thus, the third factor weighs in favor of a bond.

As to the extent and scope of discovery, and the legal costs to be incurred, there is little disagreement between the parties. Neither appears to dispute that, although this litigation is in its

early days, discovery is likely to be significant; the parties merely disagree over who is to blame for that significance. *Compare* ECF No. 79 ("Pls.' Mem."), at 14, *with* ECF No. 100 ("Def.'s Opp'n"), at 9-10. Indeed, the case involves events spanning multiple years and sophisticated financial transactions. Plaintiffs assert two counts of breach of contract, and Defendant asserts eighteen defenses and six counterclaims. *See* Answer ¶¶ 110-127, at 17-21; *id.* ¶¶ 40-77, at 30-38. The parties anticipate both fact and expert discovery. *See* ECF No. 66, at 2. It follows that Plaintiffs are likely to incur substantial attorney's fees and costs. *See* ECF No. 78 ("Bordetsky Decl."), ¶ 11. Although DBGI fairly rebuffs some of Plaintiffs' expected costs as speculative, it does not contest the notion that significant legal costs have been, and will be, incurred. *See* Def.'s Opp'n 10-12. The Court concludes that both these factors weigh in favor of Plaintiffs. *See Mango v. Democracy Now! Prods., Inc.*, No. 18-CV-10588 (DLC), 2019 WL 3325842, at *6 (S.D.N.Y. July 24, 2019).

The final factor — compliance with past court orders — weighs heavily in favor of requiring DBGI to post a bond as well. On November 13, 2026, Magistrate Judge Sarah L. Cave awarded sanctions against DBGI for non-compliance with her orders relating to settlement negotiations. *See* ECF No. 125. DBGI also concedes, in connection with Plaintiffs' pending motion for contempt sanctions, that it did not comply with the preliminary injunction order with respect to at least one Plaintiff. *See* ECF No. 99, at 15; ECF No. 91, at 12; *see also* ECF No. 98, at ¶ 6 (DBGI's CEO noting that he "was mistaken" about the due date for certain conversions). These failures to comply with court orders, willful or not, counsel in favor of bond.

In short, all but the second discretionary factor favor requiring DBGI to post a bond. Accordingly, the Court exercises its discretion and grants Plaintiffs' request. DBGI's arguments to the contrary are without merit. First, DBGI suggests that bonds are generally awarded only

against plaintiffs. *See* Def.'s Opp'n 1, 4. But by its terms, Local Civil Rule 54.2 applies to "any party," and courts have applied it to defendants as well as plaintiffs. *See, e.g.*, *Teri v. Oxford Mgmt. Servs., Inc.*, No. 05-CV-2777 (DRH) (WDW), 2013 WL 132660, at *5 (E.D.N.Y. Jan. 10, 2013) (holding plaintiffs were entitled to a bond from defendants). Second, DBGI suggests that a bond is warranted only where the party required to post a bond is foreign. *See* Def.'s Opp'n 4-5. But that is merely a single discretionary factor, not a dispositive requirement. *See Rice*, 2019 WL 2865210, at *1. Third, citing 28 U.S.C. § 1920, DBGI suggests that the "costs" contemplated by Local Civil Rule 54.2 do not include attorney's fees. *See* Def.'s Opp'n 10-11. But at the same time, DBGI (rightly) concedes that "where a party has contractually agreed to pay fees," as is the case here, they *may* be included in a Local Civil Rule 54.2 security. *Id.* at 7 (emphasis added) (citing *Kensington Int'l*, 2005 WL 646086, at *1); *accord id.* at 11; *see* SPA § 5.9. Finally, DBGI argues that Section 5.9 of the SPA is "backward-looking: the clause compensates a prevailing party, *at the end of the case*, for fees it has already spent" and "is not a security or prepayment mechanism." Def.'s Opp'n 7 (emphasis added). But that is true of any fee-shifting clause. Requiring DBGI to post a bond to secure Plaintiffs' *likely* entitlement to a fee award does not mean that Plaintiffs are *presently* entitled to such an award; it merely protects their ability to recover should they get such an award in the future.

That leaves the question of what size bond the Court should require. "The district court enjoys considerable discretion in setting a bond amount under Rule 54.2," which is "informed by both legal and equitable considerations." *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 221-22 (S.D.N.Y. 2006). As relevant here, the Court weighs both Plaintiffs' "legitimate interest in recovering costs and fees if it prevails in the litigation" and DBGI's "legitimate interest in obtaining its day in court." *Id.* at 223; *see Pfizer*, 207 F.R.D. at 26

(considering that "requiring the defendant to post a bond in [excess of $100,000] could well force the defendant into a default"). Balancing those considerations, the Court will require DBGI to post a bond of $175,000, a sum estimated to cover fees and costs already incurred as well as some costs associated with future fees and discovery. *See* Bordetsky Decl. ¶¶ 9-11. The Court agrees with DBGI that $550,000 — the amount Plaintiffs request — is both speculative and risks denying DBGI its day in court. *See* Def.'s Opp'n 10-12.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion under Local Civil Rule 54.2 is GRANTED, and DBGI is ORDERED, no later than **December 7, 2026**, to post a bond in the amount of $175,000 to secure Plaintiffs' costs and attorney's fees. The Court declines Plaintiffs' request to prejudge what the consequences would be if DBGI were not to comply with this Order. *See* Pls.' Mem. 24 ("Plaintiffs respectfully request that, should DBGI fail to post the security . . . DBGI's Answer and Counterclaims be automatically stricken . . . ."); *see also, e.g.*, *Selletti*, 173 F.3d at 110-13 (affirming a district court's decision to require the plaintiff to post security under Local Civil Rule 54.2 but finding that the district court abused its discretion in dismissing the case for failure to post the security without considering, among other things, the ability to pay).

The Clerk of Court is directed to terminate ECF No. 77.

SO ORDERED.

Dated: November 25, 2026
New York, New York

JESSE M. FURMAN
United States District Judge